UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ASHLEY ANN GREEN and ROBERT MICHAEL NAGEL, )<br>)<br>Plaintiffs, )<br>)<br>v.    )<br>)<br>OFFICER ROBERT NICHOLS, Individually )<br>and in his official capacity, and the )<br>CITY OF PORTAGE, )<br>)<br>Defendants. ) | 2:23CV109-PPS/JEM |

<u>OPINION AND ORDER</u>

On April 2, 2021, defendant Robert Nichols, a Portage, Indiana police officer, had an encounter with plaintiffs Ashley Ann Green and Robert Michael Nagel, who were in the back seat of Ms. Green's Ford Fusion automobile. Green and Nagel have filed this lawsuit alleging that Officer Nichols made a warrantless entry into the car, without justification or probable cause, and initiated charges against them based on false information. The first amended complaint alleges that Officer Nichols found the plaintiffs seated in the car fully clothed, but that he arrested Green and Nagel and executed sworn Probable Cause Affidavits falsely alleging that he had discovered plaintiffs undressed and engaged in sexual intercourse. [*Id*. at ¶¶13-16.] Based on Officer Nichols' affidavits, the Porter County Prosecutor's Office charged Green and Nagel with Public Indecency, a Level A Misdemeanor. [*Id*. at ¶¶17, 18.]

According to Green's and Nagel's complaint, Porter County dismissed the charges on or about April 22, 2021, after a prosecutor recognized that Officer Nichols' Probable Cause Affidavits contained inaccuracies because the tinted windows of the Ford Focus meant its backseat was not visible from outside the car. [*Id*. at ¶21.] Nagel and Green allege that "the wrongful arrest and the initiation of criminal prosecution" caused them pecuniary loss and "emotional distress as a result of public shaming of being painted in a false light." [*Id*. at ¶22.]

The complaint contains claims characterized as malicious prosecution (Count I), false arrest (Count II), false imprisonment (Count III) and negligence (Count IV) against both Officer Nichols and the City of Portage. The malicious prosecution claim in Count I references only federal constitutional rights, namely the "right to due process of law and rights under the Fourth and Fourteenth Amendments." [DE 20 at ¶24.] So it appears to be brought under 42 U.S.C. §1983, as a claim that the defendants deprived Nagel and Green of rights secured by the United States Constitution. Counts II and III, for false arrest and false imprisonment respectively, both contain the assertion that they are "brought pursuant to both relevant Indiana and Federal law." [*Id*. at ¶¶33, 47.] The negligence claim asserted in Count IV makes no reference to federal law. [*Id*. at ¶¶56-69.] A fair reading of the complaint is that each of the four counts seeks judgment against both the City of Portage and Officer Nichols in both his official and personal capacities.[*Id*. at ¶¶9, 10.]

2

Now before is a motion for partial dismissal.  The City contends that the federal law claims asserted against it in Counts I, II and III should be dismissed for failure to state a claim under *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658 (1978).  Officer Nichols argues that the state law claims in Counts II, III, and IV should be dismissed against him in his individual capacity because he was acting with the scope of his employment at all relevant times.  Plaintiffs have not filed any opposition to the motion.  I find the motion to have merit, and will grant the partial dismissal it seeks.

Invoking Fed.R.Civ.P. 12(b)(6), the motion alleges several failures to state a claim upon which relief can be granted.  To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555.  "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing *Twombly*, 550 U.S. at 556).

**§1983 *Monell* Claims in Counts I, II and III as Against the City of Portage**

Section 1983 authorizes a federal claim against a state actor who has deprived a plaintiff of federal rights.  *First Midwest Bank ex rel. Estate of LaPorta v. City of Chicago*, 988

3

F.3d 978, 986 (7th Cir. 2021). To prevail on a §1983 claim, the plaintiff must prove that: "(1) he was deprived of a right secured by the constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law." *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). A municipality can be liable under §1983 but only for its own violations of the federal Constitution and laws. *Monell*, 436 U.S. at 690-91. *Respondeat superior* does not apply to render a municipality vicariously liable for the torts of its agents or employees. *J.K.J. v. Polk County*, 960 F.3d 367, 377 (7th Cir. 2020) (en banc).

"A municipality may be liable under §1983 if the plaintiff can prove that the alleged unconstitutional action is caused by: (1) an express policy of the municipality, (2) 'a widespread practice that is so permanent and well-settled that it constitutes a custom or practice,' or (3) a person with final policymaking authority." *Patrick v. City of Chicago*, __ F.4th __, No. 22-1425, 2023 WL 5622075, at *2, n.3 (7th Cir. Aug. 31, 2023), quoting *Bohanon v. City of Indianapolis*, 46 F.4th 669, 675 (7th Cir. 2022). "The critical question under *Monell* is whether a municipal...policy or custom gave rise to the plaintiff's harm, or if instead the harm was the result of acts of the entity's agents." *Patrick*, 2023 WL 5622075, at *2, n.3.

What does the complaint allege in the way of municipal responsibility? The malicious prosecution claim in Count I contains some drafting errors in its allegations that the City of Portage "failed to insure that its subsidiary Portage Police Department failed to sufficiently train Officer Nichols and/or failed to develop sufficient policies,

4

procedures, and practices to ensure officers like Nichols conducted lawful searches of vehicles and made truthful statements when executing probable cause affidavits." [DE 20 at ¶26.]  The extra references to failure create an unintentional double negative, but I understand the intended assertion.

The same double negative appears in the next allegation, which is further marred by syntax that doesn't offer a complete sentence:  "The City of Portage failed to ensure that its subsidiary Portage Police Department's failure to develop proper policies, procedures, and practices toward warrantless searches of vehicles which constitutes a widespread practice or custom in that Department of unconstitutional conduct, of which Nagel and Green were victims."  [*Id*. at ¶27.]  Nonetheless, at least for present purposes, I can construe the allegation as it was clearly intended.  Count I also alleges that the police department "handles searches of vehicles with sufficient frequency that the failure to train and adopt policies resulted in the highly predictable consequence and obviousness that Nagel and Green's constitutional rights would be violated."  [*Id*. at ¶30.]

The false arrest claim in Count II and the false imprisonment claim in Count III contain the same contention in support of the City's liability:  "The City of Portage by subsidiary Portage Police Department either improperly hired, supervised, or trained Officer Nichols, or impermissibly failed to train, adopt policies and procedures, or enact such processes as would be reasonably calculated to avoid the foreseeable harm caused

5

by such improper or absent training, policies, procedures or processes." [DE 20 at ¶¶42, 45, 54.]

So all three federal claims against the City are based on a failure to train theory and a theory that the police department's failure to develop appropriate policies constitutes a widespread practice or custom on which §1983 municipal liability may be based. The policy theory does not meet the threshold of a *Monell* claim: "At the pleading stage, then, a plaintiff pursuing this theory must allege *facts* that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017)(emphasis added). The "specific actions" of the officer in this case, "without more, cannot sustain a *Monell* claim based on the theory of a *de facto* policy." *Id*.

Instead, such a claim requires examples of other officers in the department "taking actions similar to those complained of here," or at least a plausible allegation "that such examples exist." *Id*. Twenty years ago, in *Palmer v. Marion County*, 327 F.3d 588, 596 (7th Cir. 2003), the Seventh Circuit explained that "isolated acts of misconduct will not suffice; a series of violations must be presented to lay the premise" for a *Monell* claim based on a widespread practice. The same limitation continues to be recognized in 2023. "Allegations of 'a few sporadic examples of an improper behavior' will not suffice." *Thomas v. Neenah Joint School District*, 74 F.4th 521, 524 (7th Cir. 2023), quoting *Flores v. City of South Bend*, 997 F.3d 725, 733 (7th Cir. 2021). The complaint fails to state a

*Monell* claim based on city policy or practice because no facts concerning a widespread custom are alleged.

So the City of Portage succeeds in challenging the adequacy of Nagel and Green's policy theory for municipal liability. Does the same argument defeat the failure-to-train claim? The Supreme Court has held that "the inadequacy of police training may serve as the basis for §1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Therefore "*Monell*'s rule that a city is not liable under §1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program…represents a policy for which the city is responsible." *Id*. at 389. Instead a failure-to-train claim generally requires identification of a "pattern of similar constitutional violations by untrained employees," which "establishes that policymakers knew or should have known that their employees' training was deficient." *Winchester v. Marketti*, No. 11 CV 9224, 2012 WL 2076375, *4 (N.D. Ill. June 8, 2012). The high standard is necessary to avoid the *de facto* imposition of *respondeat superior* liability, as rejected in *Monell*. *City of Canton*, 489 U.S. at 392. The federal courts are not tasked with "an endless exercise of second-guessing municipal employee-training programs." *Id*.

Although a failure-to-train claim sometimes survives a motion to dismiss where a related policy claim does not, this is not such a case because the complaint does not "plausibly allege that the City acted with deliberate indifference by failing to address the

7

known [misconduct] of its police officers as a group and [Nichols] in particular." *Flores v. City of South Bend*, 997 F.3d 725, 733 (7th Cir. 2021). In *Flores*, the failure-to-train claim was adequately pled where the complaint alleged a failure of officer training about safe driving, "in the face of actual knowledge that both [the defendant officer] and South Bend police officers generally had a history of reckless speeding." *Id*. Here Nagel and Green offer no factual allegations that would support that the City acted with deliberate indifference by failing to address a known risk that its officers, or Officer Nichols in particular, would conduct unlawful vehicle searches or submit false probable cause affidavits.

The Seventh Circuit has described *City of Canton*'s required "high degree of culpability" as "a requirement that liability be based on a finding that the policymakers have actual or constructive notice that a particular omission [of training or supervision] is likely to result in constitutional violations." *Cornfield by Lewis v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1327 (7th Cir. 1993). Because Count I's conclusory pleading does not plausibly suggest that there was a failure to train that constituted deliberate indifference on the part of the police department, the failure-to-train claim is subject to dismissal under Rule 12(b)(6).

The municipal liability allegation repeated in Counts II and III [DE 20 at ¶¶42, 45, 54] includes a passing reference to the hiring of Officer Nichols. The addition of hiring as a basis for *Monell* liability appears almost to be an afterthought, and is the least supported of all the complaint's inadequately-pled theories for Portage's liability. The

8

Supreme Court has held that for a municipality to be liable under §1983 for a hiring decision, the plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Board of County Commissioners v. Brown*, 520 U.S. 397, 407 (1997). Nagel and Green offer no allegations that could plausibly support a conclusion that the City or its police department were deliberately indifferent in hiring Officer Nichols. There are no contentions at all concerning his past history, much less ones that might have served as a red flag to the hiring authority that Nichols posed a particular likelihood of engaging in the kind of behavior that is alleged here to violate Green's and Nagel's constitutional rights. Nor does the complaint contain any factual allegations that could support the existence of a general policy or practice of hiring police officer candidates who pose such risks. The complaint fails to state a *Monell* claim based on the City of Portage's hiring of Officer Nichols.

    Federal courts must "scrupulously" apply the deliberate indifference causation standard to *Monell* claims to avoid "backsliding into respondeat superior liability." *First Midwest Bank Guard of Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021). That "high bar" requires a showing "that it was obvious that the municipality's action would lead to constitutional violations and that the municipality consciously disregarded those consequences." *Id*. The boilerplate allegations of the complaint against the City of Portage concerning the police department's policies, and the hiring and training of Officer Nichols, do not plausibly support such a finding with regard to

Officer Nichols' allegedly unconstitutional behavior. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") Portage's unopposed motion to dismiss the federal claims in Counts I, II and III against the City will be granted.

**State Law Claims in Counts II, III and IV as Against Officer Nichols**

Officer Nichols argues that the state law claims asserted against him in his individual capacity should be dismissed because Indiana law bars a plaintiff from suing a governmental employee in his individual capacity if he was acting within the scope of his employment at the time the plaintiffs sustained the alleged loss. [DE 26 at 6.] Under the heading "PARTIES," the complaint expressly alleges that Nichols "was at all relevant times, a sworn law enforcement officer employed by the City of Portage's subsidiary Portage Police Department, acting in the capacity as an agent, servant, and employee of that Office[.]" [DE 20 at ¶7.]

Officer Nichols invokes Indiana Code §34-13-3-5(b) which governs state law tort claims against public employees. That provision plainly states that: "[a] lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." The state law false arrest, false imprisonment and negligence claims are defeated by this portion of Indiana's Tort Claims Act, to the extent they name Officer Nichols in his individual capacity. *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014) ("Under the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the

scope of his employment."); *Dircks v. Barnes*, No. 1:21-cv-00451-JMS-MG, 2023 WL 4761662, at *24 (S.D.Ind. July 26, 2023). The motion to dismiss will be granted as to Counts II, III and IV, to the extent that they assert state law claims against Nichols in his individual capacity.

**Summary**

Nagel and Green's factual allegations are insufficient to state a claim against the City of Portage on Counts I, II and III to the extent those claims are made against the City under federal law. Indiana law bars the state law claims asserted in Count II, III and IV against Officer Nichols in his individual capacity. The unopposed motion for partial dismissal of the first amended complaint will be granted as to those claims. I deal only with the aspects of the first amended complaint challenged in the motion. Because each of the four counts is directed against both defendants, and as to Officer Nichols in both his individual and official capacities, no count and neither defendant are completely disposed of by this ruling.

**ACCORDINGLY:**

Defendants' unopposed Partial Motion to Dismiss Plaintiffs' First Amended Complaint for Damages [DE 25] is GRANTED.

Counts I, II and III to the extent they assert claims under federal law against the City of Portage are DISMISSED WITH PREJUDICE.

Counts II, III and IV to the extent they assert claims under state law against Officer Robert Nichols are DISMISSED WITH PREJUDICE.

11

In all other respects, the action remains pending against both defendants.

**SO ORDERED**.

ENTERED: September 27, 2023.

                                             /s/ Philip P. Simon
                                         PHILIP P. SIMON, JUDGE
                                         UNITED STATES DISTRICT COURT